Irrera et vir, Appellants, *v.* Southeastern Pennsylvania Transportation Authority et al.

510

Argued March 22, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Bernard J. Avellino*, for appellants.

*James Ciamaichelo*, with him *Robert H. Messerman, Lewis H. Van Dusen, Jr., Joseph F. Keener, Jr.,*

*Emil F. Toften,* and *Norman M. Hegge, Jr.,* for appellee, Southeastern Pennsylvania Transportation Authority.

*James M. Penny, Jr.,* Assistant City Solicitor, with him *John Mattioni,* Deputy City Solicitor, and *Martin Weinberg,* City Solicitor, for appellee, City of Philadelphia.

OPINION BY SPAETH, J., December 11, 1974:

Appellants are Immaculate Irrera and her husband Joseph Irrera. They appeal from the entry of summary judgment against them and in favor of Southeastern Pennsylvania Transportation Authority.

On July 13, 1970, Mrs. Irrera injured herself when she tripped and fell while crossing 8th Street at Tasker Street, in Philadelphia. Her fall was due to a hole or depression in the surface of the street near but not between SEPTA's trolley tracks. On August 10, 1970, notice of Mrs. Irrera's claim was given to the City of Philadelphia.[1] On July 3, 1972, ten days before the statute of limitations expired,[2] Mrs. Irrera and her husband brought an action in trespass against the City and SEPTA. The City denied all responsibility and filed new matter averring that "the area and situs described in plaintiffs' Complaint was possessed or controlled by the co-defendant SEPTA," and "if there was any unsafe or hazardous condition thereon it was due to [SEPTA's] carelessness and negligence." SEPTA filed new matter averring that by virtue of Section 36 of the Metropolitan Transportation Authorities Act of August 14, 1963, P. L. 984, 66 P.S. §2036, it was entitled to "written notice . . . within six months of

---

[1] *See* Act of July 1, 1937, P. L. 2547, §1, 53 P.S. §5301, requiring notice within six months.

[2] Act of June 24, 1895, P. L. 236, §2, 12 P.S. §34.

the date of injury or accrual of the cause of action by any person sustaining injury or to whom such cause of action has accrued," but that it had not received such notice. In reply Mr. and Mrs. Irrera pleaded the August 10, 1970 notice to the City, adding: "This notice was supplemented by letter dated August 20, 1970, wherein the precise location of the accident was described, the names and addresses of eyewitnesses were provided, and a description of each injury sustained by the Wife Plaintiff was supplied as was information on her medical care. Therefore, Plaintiffs contend that having provided adequate notice of Wife Plaintiff's claim within thirty (30) days to the party primarily responsible for Wife Plaintiff's injuries, Wife Plaintiff has satisfied in substance any statutory duty which might exist to provide such notice to the Southeastern Pennsylvania Transportation Authority, whose liability is either concomitant or secondary."

On these pleadings SEPTA moved for summary judgment. Mr. and Mrs. Irrera's answer to the motion for summary judgment added nothing to their reply to SEPTA's new matter. No depositions were taken nor any affidavits filed. Counsel for Mr. and Mrs. Irrera did file a "memorandum in support" of their answer to SEPTA's motion for summary judgment. This memorandum consisted of the following "exhibits": letter of August 10, 1970, addressed to the City Solicitor by counsel for Mrs. Irrera and notifying the City of her claim; acknowledgement of August 18, 1970, addressed to counsel for Mr. and Mrs. Irrera by an Assistant City Solicitor and requesting "additional information" "[t]o assist our investigation;" reply of August 18, 1970, furnishing certain additional information; and finally, letter of March 7, 1973, addressed to counsel for Mr. and Mrs. Irrera by the Assistant City Solicitor, and stating that "the following information may be of some help to you in reference to [SEPTA's] motion [for

summary judgment], Our investigation reveals that on February 24, 1970, a City highway inspector sent to SEPTA a notice No. P.I.R. 409 advising them that there was a 'working rails [*sic*] causing defective paving in and along both rails, possible cave-in all along the section.' Therefore, although SEPTA may not have been aware of this accident, they certainly were aware of this dangerous condition prior to the accident."

It should at this point be observed that these "exhibits" were not properly before the court. Pa. R. Civ. P. 1035(a) provides that the court may consider depositions, answers to interrogatories, admissions on file, and affidavits prior to ruling on a motion for summary judgment. These papers, however, "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Pa. R. Civ. P. 1035(d). Here appellants' "exhibits" were simply characterized as a "memorandum" without being sworn to or without otherwise complying with Rule 1035. As such, they cannot be considered part of the record.[3] Appellants' irregular practice is however of no importance, for if the exhibits are regarded as part of the record nevertheless the court below properly entered summary judgment in SEPTA's favor.

Appellants contend that Section 36 of the Metropolitan Transportation Authorities Act, *supra*, 66 P.S. §2036, violated Article I, §26, and Article III, §18, of the Pennsylvania Constitution.[4] Briefly, the conten-

---

[3] The same is so of certain affidavits that SEPTA has included in its brief to us.

[4] The City in its brief to us also contends that Section 36 violates Article III, §18. We need not consider whether the City as appellee has standing to make this contention.

tion is that Section 36 is discriminatory in violation of Article I, §26, and is a statute of limitation in violation of the provision of Article III, §18, that "[n]o act shall prescribe any limitation of time within which suit may be brought against corporations for injuries to person . . . different from those fixed by general laws regulating actions against natural persons. . . ." These issues, however, were not raised in the court below. It is settled that issues not raised below cannot be raised on appeal even though they involve constitutional questions. *Altman v. Ryan*, 435 Pa. 401, 257 A. 2d 583 (1969); *Wynnewood Civic Assn. v. Lower Merion Twp. Bd. of Adj.*, 406 Pa. 413, 179 A. 2d 649 (1962); *Muse-Art Corp. v. Phila.*, 373 Pa. 329, 95 A. 2d 542 (1953); *Montgomery County Bar Ass'n v. Rinalducci*, 329 Pa. 296, 197 A. 924 (1938); *Lovejoy v. Georgeff*, 224 Pa. Superior Ct. 206, 303 A. 2d 501 (1973). The proper way to challenge the constitutionality of a statute in a civil case is to plead the issue and give notice to the Attorney General as required by Pa. R. C. P. 235(a). *McIlwain v. McIlwain*, 27 Som. 352 (1972). As that procedure was not followed here the issue must be deemed abandoned or waived. *Cf. Superior Mining Co. Property Tax Sale*, 359 Pa. 357, 59 A. 2d 301 (1948). Further, in *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A. 2d 114 (1974), the Supreme Court has held that the doctrine of fundamental error is no longer applicable in civil cases. "This doctrine, which may in the past have been acceptable, has become an impediment to the efficient administration of our judicial system." *Id.* at 260, 322 A. 2d at 117.

The argument that appellants did make in the court below, and which they repeat here, is that they substantially complied with Section 36 of the Metropolitan Transportation Authorities Act.

Section 36 provides: "Within six months from the date that any injury was received, or any cause of

action accrued, any person who is about to commence any civil action in any court against the authority for damages on account of any injury to his person shall file in the office of the secretary of the board, and also in the office of the chief counsel for the authority, either by himself, his agent, or attorney, a statement in writing, signed by himself, his agent, or attorney, giving the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date, and about the hour of the accident, the place or location where the accident occurred, and the name and address of the attending physician, if any. If the notice provided for by this section is not filed as provided, any civil action commenced against the authority more than six months after the date of injury, shall be dismissed and the person to whom any such cause of action accrued for any personal injury shall be forever barred from further suing." 66 P.S. §2036. Substantial compliance with these provisions is sufficient to prevent dismissal. *Dubin v. Southeastern Pennsylvania Trans. Auth.*, 219 Pa. Superior Ct. 476, 281 A. 2d 711 (1971) (suit allowed though notice not given for six months and six days). *See also LaBriola v. Southeastern Pennsylvania Trans. Auth.*, 227 Pa. Superior Ct. 305, 323 A. 2d 9 (1974).

Appellants first contend that the timely notice to the City as the party primarily responsible for the repair of defective paving, *Sculley v. Philadelphia,* 381 Pa. 1, 112 A. 2d 321 (1955), constituted substantial compliance with Section 36. This argument depends on a misunderstanding of the reasons for the enactment of the Metropolitan Transportation Authorities Act. The Act was intended to alleviate traffic congestion in urban and suburban communities due to uncoordinated and obsolete mass transportation facilities. *Id.* §2, 66 P.S. §2002. As an authority created pursuant to the Act, SEPTA operates in a regional capacity. It is not

limited in its operation to Philadelphia but may also operate in the counties immediately surrounding Philadelphia. *Id.* §4, 66 P.S. §2004. Incident to this grant of regional capacity, the Act explicitly states that "an authority shall in no way be deemed to be an instrumentality of any city or county or other municipality engaged in the performance of a municipal function, but shall exercise the public powers of the Commonwealth as an agency and instrumentality thereof." *Id.* Accordingly, SEPTA is not a creature, agent, or representative of Philadelphia or of any municipality. *See Philadelphia v. Southeastern Pennsylvania Trans. Auth.*, 1 Pa. Commonwealth Ct. 101, 271 A. 2d 504, *aff'd* 441 Pa. 518, 272 A. 2d 921 (1970). Notice to SEPTA is not notice to a municipality; nor is notice to the municipality notice to SEPTA.

Appellants next contend that they substantially complied with Section 36 because they gave SEPTA notice of their claim "[w]ithin six months from the date [their] . . . cause of action accrued." 66 P.S. §2036.[5] Their argument is as follows: their cause of action did not " 'accrue' until [Mrs. Irrera's] actual discovery of SEPTA's covert culpability" (Appellants' Brief at 9) ; this actual discovery did not occur until the City's letter of March 7, 1973, telling them of the City's notice to SEPTA in February, 1970, that there was a "possible cave-in" along the tracks near which Mrs. Irrera fell; by the time of the City's letter, suit had already been filed.

In the first place, this argument is unsupported by the record. The fact that the City told appellants'

---

[5] While Section 36 does contemplate two possible computations ("[w]ithin six months from the date that any injury was received, or any cause of action accrued"), it does not include a provision recognizing a "reasonable excuse" for not giving notice, as does the statute requiring notice to the City. Act of July 1, 1937, P. L. 2547, §1, 53 P.S. §5301.

counsel on March 7, 1973, of the City's notice to SEPTA does not show that it was not until then that appellants had "actual knowledge" of "SEPTA's covert culpability." One may inquire why, if appellants did not know of SEPTA's liability until so late, they filed suit against SEPTA nine months earlier, on July 3, 1972.[6] Passing this point, however, there is a further difficulty with appellants' argument.

The cases are replete with circular statements describing when a cause of action accrues. For example, "a cause of action accrues at the moment the party has a legal right to sue." *Philadelphia, Baltimore & Washington R. R. v. Quaker City Flour Mills Co.*, 282 Pa. 362, 367, 127 A. 845, 847 (1925). In *New York & Pennsylvania Co. v. New York Central R. R. Co.*, 300 Pa. 242, 245-46, 150 A. 480, 481 (1930), it is said that "the time specified in a statute of limitations does not begin to run until there is an existing right to sue forthwith," and in *Bell v. Brady*, 346 Pa. 666, 31 A. 2d 547, 549 (1943), that "a cause of action accrues only when one has the right to institute a suit."

As is so of all statutes, the Metropolitan Transportation Authorities Act must be construed in the light of reason and common sense; it must not be made to produce a result the Legislature did not intend. *Sicola v. First National Bank of Altoona*, 404 Pa. 18, 170 A. 2d 584 (1961) ; *Ayers v. Morgan*, 397 Pa. 282, 284, 154 A. 2d 788, 789 (1959). The purpose of Section 36 is to provide the defendant authority with the opportunity to make timely investigations and avoid the difficulty of defending against stale and fraudulent claims. *Dubin v. Southeastern Pennsylvania Trans. Auth., supra.* While Section 36 is not strictly a statute of limitation,

---

[6] The suit was initiated by writ of summons. On July 27, 1972, SEPTA ruled appellants to file a complaint within 20 days or suffer non pros. The complaint was filed on August 16, 1972.

*id.,* its purpose is similar to that underlying such a statute. Statutes of limitation "are desirable in that they prevent oppression by forbidding plaintiffs to litigate stale claims and thus compel defense at a time when such defense is no longer practicable. . . ." *Ayers v. Morgan, supra,* at 295, 154 A. 2d at 794 (1959) (McBRIDE, J., concurring). This similarity of purpose indicates that the rules of construction applied to a statute of limitation are also appropriate for interpretation of Section 36.

In *Deemer v. Weaver,* 324 Pa. 85, 187 A. 215 (1936), the life tenant of a parcel of real estate received permission from the remaindermen to sell the land for $5,000, which she claimed was the best obtainable price. In fact she sold the parcel for $9,000, keeping $4,000 for herself. Although the remaindermen did not discover this fact for twelve years, the Court decided that they still had a right to sue because the life tenant's fraud and concealment tolled the running of the statute of limitation. Similarly, in *Plazak v. Allegheny Steel Company,* 324 Pa. 422, 188 A. 130 (1936), the Court held that if through fraud or active concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of injury, the defendant is estopped from invoking the statute of limitation.

In *Ayers v. Morgan, supra,* a surgeon left a sponge in the body of his patient. The Court held that the applicable two-year statute of limitation did not begin to run until the patient learned of the presence of the sponge in his body: "It would be illogical and unintelligent to say that a person who does not know, and cannot know, for example, that a surgeon has negligently left a rubber tube in his body, would be denied damages because his claim . . . was filed . . . more than two years after the operation." *Ayers v. Morgan, supra,* at 285, 154 A. 2d at 789. In *Daniels v. Beryllium Cor-*

*poration*, 227 F. Supp. 591 (E.D. Pa. 1964), the plaintiff became ill with beryllium poisoning in 1953. She did not commence suit until 1958, explaining that she had not known that her illness was caused by pollution from defendant's nearby plant. The court, FREEDMAN, J., ruled that under Pennsylvania law the statute did not start to run until that date when by the exercise of reasonable diligence she could have discovered the cause of her condition. Finally, in *Smith v. Bell Telephone Company*, 397 Pa. 134, 153 A. 2d 477 (1959), the plaintiff knew that sewage was seeping into his basement, but despite all his efforts he did not discover until much later that the harm was due to defendant's subterranean wire conduit. The court reiterated the rule that an action will not be barred if the cause of the damage was incapable of discovery within the allowed time.

From these cases it appears that the rule that best manifests the Legislature's intent in enacting Section 36 of the Metropolitan Transportation Authorities Act, *supra*, 66 P.S. §2036, is that time begins to run on the date of the injury unless, because of fraud or concealment by the authority, or in spite of reasonable diligence by the claimant, knowledge of the negligence or its causes cannot be discovered until after the six month period. This does not mean that the claimant's duty of inquiry will be excused by mere mistake, misunderstanding, or actual lack of knowledge. *See Penn-Delco Union School District Authority v. M. & L. Construction Company*, 60 D. & C. 2d 226 (1972). If a party has the means of discovery within his power but neglects to use them, his claim will still be barred. *See Ridgway's Account*, 206 Pa. 587, 591, 56 A. 25, 26 (1903); *Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co.*, 167 Pa. 136, 31 A. 484 (1895).

Since there is no evidence of fraud or concealment by SEPTA, the question in this case is not what did

Mr. and Mrs. Irrera "actually know" of their injuries, but what could they have learned by the exercise of reasonable diligence. The question whether a plaintiff has exercised reasonable diligence is usually left to the jury. *Smith v. Bell Telephone Company, supra; Daniels v. Beryllium Corporation, supra.* In this instance, however, the question arises on motion for summary judgment. On such a motion the court must decide whether there are any genuine issues of material fact. *Kent v. Miller,* 222 Pa. Superior Ct. 390, 294 A. 2d 821 (1972). In making that decision the court may not consider facts not of record. *Erie Indemnity Co. v. Coal Operators Cas. Co.,* 441 Pa. 261, 272 A. 2d 465 (1971). Nowhere in the record here does it appear that appellants could not have learned of SEPTA's liability had they exercised reasonable diligence. In *Smith v. Bell Telephone Company, supra,* the plaintiff made numerous efforts to find the cause of the seepage into his basement, until finally in desperation he and a friend tunnelled under the sidewalk. In reversing the refusal to take off the judgment of nonsuit the Supreme Court held that the plaintiff had made an energetic attempt at discovery. Here appellants simply complain that the City's general duty to supervise and control its streets disguised SEPTA's liability. That is not enough. Had appellants propounded interrogatories to the City they would no doubt have learned of the City's claim that SEPTA was the negligent party. The docket entries disclose, however, that although both the City and SEPTA filed interrogatories, appellants never did.

In *Micalizzi v. Borough of Darby and SEPTA,* 222 Pa. Superior Ct. 251, 294 A. 2d 779 (1972), it was held that filing a writ of summons one day prior to the running of the two year statute of limitation could not be construed as "substantial compliance" with Section 36. There is nothing to take this case outside that decision.

522

The judgment of the court below is affirmed.

Van der Voort, J., dissents.

Hoffman, J., took no part in the consideration or decision of this case.